**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:25-cr-382 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| TROY BAKER, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant Troy Baker's motion to dismiss the Superseding Indictment. ("Motion to Dismiss") (ECF No. 17).  Defendant asserts that 18 U.S.C. § 922(g)(1)—the statute under which Defendant is charged in Counts One and Two—is unconstitutional on its face and as applied to him under current Supreme Court precedent.  The Government filed its response in opposition, (ECF No. 19), and Defendant his reply in support, (ECF No. 20).  For the following reasons, Defendant's Motion to Dismiss is **DENIED.**

**I.      BACKGROUND**

On December 3, 2025, a federal grand jury returned a Superseding Indictment charging Defendant with two counts of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Counts One and Two).  (ECF No. 12).  Under Counts One and Two, the Superseding Indictment alleges that Defendant "knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that being: Possession of a Stolen Firearm, on or about July 8, 2024, in Case Number 1 :22-CR-648, in Federal District Court, Northern District of Ohio, knowingly possessed in and affecting interstate commerce a firearm, to wit:" (i) "a Taurus, model G3, 9mm caliber pistol, bearing serial number ADJ650217"; and (ii) "an Anderson Manufacturing AM-15, 5.56x45mm caliber pistol, bearing serial number 16238015."

1

(*Id.* at PageID #35–36).  The Superseding Indictment also includes a demand that Defendant forfeit the firearms at issue.  (*Id.* at PageID #36).

On March 16, 2016, Defendant filed the Motion to Dismiss, raising both facial and as-applied challenges to the constitutionality of 18 U.S.C. § 922(g)(1).  (ECF No. 17).  On April 2, 2026, the Government filed its opposition and argued that Sixth Circuit precedent supports the constitutionality of § 922(g)(1) on its face and as applied to Defendant.  (ECF No. 19).  Defendant filed his reply brief on April 12, 2026.  (ECF No. 20).

## II.      MOTION STANDARD

Defendant's motion to dismiss is governed by Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which provides that a criminal defendant may move to dismiss an indictment for the Government's "failure to state an offense."  An indictment properly charges a criminal offense if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  The Court must take the indictment's factual allegations as true and decide only whether the indictment is "valid on its face."  *Costello v. United States*, 350 U.S. 359, 363 (1956); *see United States v. Williams*, 504 U.S. 36, 54–55 (1992) (limiting pretrial review of indictments to facial challenges).

## II.      DISCUSSION

### A.      *Bruen*, *Rahimi*, and the Second Amendment

The Second Amendment of the Constitution provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  In recent decades, the Supreme Court has interpreted the Second Amendment

as codifying an individual person's "right to possess and carry weapons in case of confrontation" unrelated to militia service. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 4 (2022) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008)). *See* Adam Winkler, *Gun Fight: The Battle Over the Right to Bear Arms in America* 95 (2013) (explaining that the Second Amendment was understood as a mechanism to keep the federal government from disarming militias until the 1960s, when scholars began advancing the now-embraced "individual rights" theory).

Bruen expressed a clear, two-step framework for deciding the constitutionality of gun laws: first, the district court must decide whether the plain text of the Second Amendment covers an individual's conduct. *Bruen*, 597 U.S. at 18. If the Second Amendment's text covers a person's conduct, then the law is presumptively unconstitutional, and the Government has the burden of demonstrating "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individuals' conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). The Court's interpretation is based on recognition that the Second Amendment expresses a "pre-existing right . . . inherited from our English ancestors," and is derived not only from 17th century English law, but also from the public understanding of the Second Amendment as expressed through the writings of Founding-era leaders, the views of modern-era historians, and analogous arms-bearing laws in place when the Second Amendment was ratified. *Id.* at 20 (citing *Heller*, 554 U.S. at 595–605). In *United States v. Rahimi*, the Supreme Court clarified that the firearm regulation must be consistent with the "principles that underpin our regulatory tradition,"

3

but there "need not be a 'dead ringer' or a 'historical twin'" for it to be valid.  602 U.S. 680, 703–04 (2024).

### B.      *Williams* **and Dangerousness**

After *Bruen* and *Rahimi* were decided, the Sixth Circuit considered a challenge to 18 U.S.C. § 922(g)(1) in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024).  Williams raised facial and as-applied challenges to the constitutionality of § 922(g)(1).  *Id*. at 643.  Using the *Bruen* framework, the Sixth Circuit found that nothing in the Second Amendment's text distinguishes between felons and non-felons.  *Id*. at 649.  Rather, the plain text confers the right to "the people," which "unambiguously refers to all members of the political community, not an unspecific subset." *Id*. (citing *Dist. of Columbia v. Heller*, 554 U.S. 570, 580 (2008)).

Finding no carve-out of Second Amendment protection for felons, the Sixth Circuit then conducted a detailed historical analysis and concluded that the "governments in England and colonial America long disarmed groups that they deemed to be dangerous." *Williams*, 113 F.4th at 657.  However, historically "individuals could demonstrate that their particular possession of a weapon posed no danger to peace."  *Id*.  Thus, the Sixth Circuit concluded that § 922(g)(1) is not susceptible to a facial challenge.  *Id*.  Section 922(g)(1) is susceptible to an as-applied challenge because an individual could demonstrate that he is not dangerous.  *Id*.  The Sixth Circuit held that in considering an as-applied challenge, it is Defendant's burden to show he is not dangerous.  *Id*. at 662.  The Sixth Circuit detailed what could constitute a dangerousness finding:

> A person convicted of a crime is "dangerous," and can thus be disarmed, if he has committed (1) a crime "against the body of another human being," including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary.  An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous.

. . .

> In any event, district courts need not find a "categorical" match to a specific common-law crime to show that a person is dangerous. Rather, district courts should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction. Finally, when considering an individual's dangerousness, courts may evaluate a defendant's entire criminal record— not just the specific felony underlying his section 922(g)(1) prosecution.

*Id*. at 663. The Sixth Circuit found that Williams's facial and as-applied challenges to § 922(g)(1) failed. *Id*. at 662. The Sixth Circuit determined that Williams's criminal record showed that he is dangerous because he had two "felony counts of aggravated robbery," a previous conviction for attempted murder, and a previous conviction for possessing a firearm as a felon. *Id*. Thus, § 922(g)(1) was constitutional as applied to him. *Id*.

### C. Defendant's Facial Challenge

Defendant asserts facial and as-applied challenges to the constitutionally of § 922(g)(1). (ECF No. 17, PageID #53–56). With respect to his facial challenge, Defendant acknowledges that current Sixth Circuit precedent holds § 922(g)(1) as constitutional on its face, but he raises the challenge in order to preserve further review. (*Id.*). The *Williams* court held that § 922(g)(1) is "constitutional on its face and as applied to dangerous people." *Williams*, 113 F.4th at 662–63. That case remains binding authority; therefore, Defendant's facial challenge to the statute fails.

### D. Defendant's As-Applied Challenge

Defendant argues that § 922(g)(1) is unconstitutional as applied to him because the predicate felony at issue is not a crime of violence against a person or comparable to the aggravated robbery conviction in *Williams*, and his prior record does not establish that he belongs to a category of dangerous persons who were historically disarmed. (ECF No. 17, PageID #54–56). His supplement cites the Sixth Circuit's recent decision in *United States v. Hostettler*, No. 24-3403,

2026 LX 177130 (6th Cir. Mar. 20, 2026), for the proposition that: (i) his dangerousness determination must be fact-specific and take into account the unique circumstances of his specific convictions; and (ii) the Government cannot merely rely on the fact of prior felony convictions to justify permanent disarmament.  (ECF No. 18, PageID #58–59).

The Government responds that Defendant's criminal history demonstrates that he is dangerous and precludes an as-applied challenge to § 922(g)(1), citing his prior state convictions for Attempted Improperly Handling a Firearm in a Motor Vehicle, Conspiracy to Possess with Intent to Deliver Cocaine, and Having a Weapon While Under Disability, as well as his prior federal conviction for Possessing a Stolen Firearm.  (ECF No. 19, PageID #64–66).  The Government also points to Defendant's arrest and citation for "OVI" while awaiting sentencing for the prior federal conviction, and the facts surrounding his arrest in this case.  (*Id.* at PageID #66–67).

Defendant replies that a drug conviction does not automatically make him dangerous and the Court must conduct an individual inquiry.  (ECF No. 20, PageID #100).  He argues that the offenses involved in his prior convictions  "are not equivalent to the historical categories of individuals disarmed at the Founding," specifically because they are not offenses related to rebellion, refusing to swear allegiance, or posing an imminent threat to public safety—and involve no violent misuse of firearms against others.  (*Id.* at PageID #101–03).

The Court finds that Defendant's as-applied challenge fails because his criminal record shows he is dangerous and can be legally disarmed.  It is Defendant's burden to show that he is not dangerous, not the Government's, and he has not made that showing.  Defendant's criminal record includes four prior felony convictions: (i) attempted improperly handling a firearm in a motor vehicle, in violation of Ohio Rev. Code §§ 2923.02 and 2093.16 (felony in the fifth degree);

(ii) conspiracy to possession with intent to deliver cocaine, in violation of Pennsylvania C.S.A. §§ 903(a)(1) and 780-113(a)(30); (iii) possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); and (iv) having a weapon while under disability, in violation of Ohio Rev. Code § 2923.13 (felony in the third degree).  (ECF No. 5, PageID #11–13; ECF Nos. 19-1, 19-3, 19-5, 19-7).  Defendant's conviction for conspiracy to possession with intent to deliver cocaine conviction is a drug trafficking conviction that is in the second category of crimes listed in *Williams* that the Sixth Circuit categorizes as "dangerous" and an offense which inherently poses a significant threat of danger.  *Williams*, 113 F.4th at 663.  The *Williams* court explained that a person convicted of drug trafficking "will have a very difficult time" of "showing he is not dangerous." *Id.*

Since *Williams*, the Sixth Circuit has consistently held that convictions for drug trafficking are indicative of dangerousness and a person convicted of such an offense is presumptively dangerous.  *See, e.g.*, *United States v. Taylor*, 165 F.4th 1029, 1035 (6th Cir. 2026) ("Taylor's felony drug trafficking convictions fall within the second *Williams* category.  Therefore, the district court properly concluded that Taylor was dangerous based on his prior felony drug trafficking convictions."); *United States v. Wilkinson*, No. 24-5778, 2026 LX 104872, at *5 (6th Cir. Apr. 2, 2026); *United States v. Brooks*, No. 24-5334, 2025 LX 456395, at *3 (6th Cir. Oct. 16, 2025) ("A person is presumptively dangerous if . . . if he has committed a 'crime that inherently poses a significant threat of danger' such as 'drug trafficking.' (quoting *Williams*, 113 F.4th at 663)).  Here, Defendant's prior conviction for drug trafficking does not automatically classify him as dangerous, contrary to Defendant's argument.  It instead creates a rebuttable presumption that Defendant has the burden to overcome.

The Court also finds that Defendant's historical analogue argument fails as well.  As explained by the Supreme Court, a firearm regulation "need not be a 'dead ringer' or a 'historical twin'" for it to be valid, it must only by consistent with the principles underlying our Nation's regulatory tradition.  *Rahimi*, 602 U.S. at 703–04.  The Fifth Circuit affirmed a § 922(g)(1) conviction based on previous convictions for drug trafficking after finding that such a conviction was consistent with the Nation's historical tradition of firearm regulation and persons convicted of drug trafficking belong to a class of dangerous felons that Congress could disarm.  *United States v. Kimble*, 142 F.4th 308, 314–18 (5th Cir. 2025).  The Fifth Circuit analyzed historical analogues related to drug trafficking, then concluded:

> The "undeniable throughline" that *Connelly* recognized in our history—that "Founding-era governments took guns away from those perceived to be dangerous," *Connelly*, 117 F.4th at 278—accords with (g)(1)'s rationale for disarming Kimble.  Like legislatures in the past that sought to keep guns out of the hands of potentially violent individuals, Congress today regards felon drug traffickers as too dangerous to trust with weapons.
>
> That supposition is well supported by caselaw.  The Supreme Court has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993).  This circuit has also credited testimony that "drugs and guns are commonly found together and that drug dealers use guns to protect their business because of the *inherent violence* of the trade." *United States v. Yanez Sosa*, 513 F.3d 194, 202 (5th Cir. 2008) (emphasis added).  Other circuits have similarly acknowledged that "drug dealing is notoriously linked to violence." *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (citations omitted).  For those reasons, numerous judges and scholars have suggested that disarming drug dealers under (g)(1) "makes sense because their past crimes were inherently danger-ous [sic]." *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting).
>
> The Legislative and Executive Branches also associate drug trafficking with violence.  In 1986, Congress added the term "drug trafficking crime" to a related provision in § 922(g)(1)'s statutory scheme "to enhance the ability of law enforcement to fight violent crime and narcotics trafficking."  Before that amendment, the provision had referenced only "a crime of violence," but on account of "confusion in the courts of appeals about whether drug trafficking constituted a 'crime of violence' under the statute," the White House requested that Congress "amend the language of [18 U.S.C.] § 924 to include drug

8

crimes in light of the fact that criminals involved in drug trafficking may often carry or use firearms during the commission of drug-related felonies." Congress complied, and courts thereafter understood the amended law as "an effort to combat the dangerous combination of drugs and guns." *Muscarello v. United States*, 524 U.S. 125, 132, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998) (quotations omitted).

In short, the Legislative, Executive, and Judicial Branches agree that drug trafficking is an inherently dangerous activity, and Congress has responded to that threat by disarming convicted drug traffickers via § 922(g)(1). That decision does not violate the Second Amendment. Because Kimble's predicate felony conviction "indicates that he poses a threat to public safety and the orderly functioning of society," his (g)(1) conviction is "consistent with this Nation's historical tradition of firearm regulation and punishment of people who have been convicted of violent offenses." *Schnur*, 132 F.4th at 870 (quotation omitted).

*It is* –17 (footnotes omitted).

Other circuits have conducted a similar historical analysis and all upheld § 922(g)(1) convictions as applied to defendants who were previously convicted of drug trafficking, even when those offenses were "non-violent." *See, e.g.*, *United States v. Duarte*, 137 F.4th 743, 758–61 (9th Cir. 2025) (en banc); *United States v. Dubois*, 139 F.4th 887, 894–900 (11th Cir. 2025) (C.J. Pryor, concurring); *United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024); *see also United States v. Watson*, No. 24-2432, 2026 LX 175860, at *24 (7th Cir. Apr. 2, 2026) ("Exercising its authority like state legislatures at the Founding, Congress reasonably determined that a felony drug conviction is a 'dangerous' crime. That link makes 'common sense.'"). The Court adopts the analysis of the above cases and finds that our Nation's historical tradition of firearm regulation supports the disarming of individuals convicted of drug trafficking offenses because such convictions inherently involve a danger to society.

To the extent Defendant argues that he is not dangerous because his prior convictions did not involve violence against others, the Court finds that argument unpersuasive. The Sixth Circuit has rejected such arguments and held that prior drug trafficking convictions need not involve violence to support of finding of dangerousness. *See Taylor*, 165 F.4th at 1035 ("*Williams* does

9

not require violence to show dangerousness."); *United States v. Crawford*, No. 23-5429, 2025 U.S. App. LEXIS 31860, at *5–6 (6th Cir. Dec. 5, 2025)  ("[A] specific instance of drug trafficking does not need to involve violence, or even an immediate threat of violence, to pose a significant threat of danger.").  The *Williams* court named drug trafficking as the prime example of a category of crimes that pose a significant threat of danger, even though they "do not always involve an immediate and direct threat of violence against a particular person."  113 F.4th at 659.  As explained by the *Williams* court:

> "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."  *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010).  In addition, it often leads to violence. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 1002, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment). . . . Ultimately, most of these crimes put someone's safety at risk, and thus, justify a finding of danger.

*Id.*  Thus, even though there is no evidence that Defendant's prior conviction for drug trafficking involved direct violence or threats of violence, that does not preclude a finding of dangerousness. Defendant's engagement in drug trafficking, specifically in the distribution of crack cocaine and heroin, (ECF No. 19-4, PageID #74–75), posed a significant danger to the safety of others and the community.

Defendant's prior convictions involving firearms also demonstrate his dangerousness.  For Defendant's prior conviction of attempted improperly handling of a firearm in a motor vehicle, the firearm was found under the passenger seat with a round in the chamber and six live rounds in its magazine.  (ECF Nos. 19-1, 19-2).  Defendant pled guilty to having weapons while under disability in 2024, after police found a revolver, a semi-automatic handgun, a loaded magazine, and a loaded revolver cylinder in a vehicle driven by Defendant, despite Defendant stating no weapons were in the vehicle.  (ECF Nos. 19-5, 19-6).  In a previous federal case, Defendant also pled guilty to possessing a stolen firearm in 2024, where police recovered three firearms during a traffic stop:

(i) a Glock 19, 9mm pistol, loaded with 31 live rounds in an extended magazine and modified with a switch that rendered it fully automatic; (ii) a Glock 26, loaded with high-capacity magazine and modified with a switch that rendered it fully automatic; and (iii) a loaded Glock 19x that was reported stolen and Defendant admitted to possessing.  ECF No. 67, PageID #345, *United States v. Baker*, No. 1:22-cr-648 (N.D. Ohio Jun. 20, 2024); (ECF No. 19-7, PageID #84).

On May 17, 2024, while on bond and awaiting sentencing in the above federal case for possessing a stolen firearm, Defendant was arrested by a police officer after he was found passed out behind the wheel of a motor vehicle with a loaded firearm in his lap.  ECF No. 67, PageID #344, *United States v. Baker*, No. 1:22-cr-648 (N.D. Ohio Jun. 20, 2024); (ECF No. 19-8).  The district court issued a warrant for Defendant's arrest for violating his bond, a bond revocation hearing was held, Defendant admitted to possession of the firearm on May 17, 2024, and his bond was revoked.  ECF No. 61 and ECF No. 67, PageID #345, *United States v. Baker*, No. 1:22-cr-648 (N.D. Ohio); Minutes of Proceeding [non-document] dated May 22, 2024, *United States v. Baker*, No. 1:22-cr-648 (N.D. Ohio May 22, 2024).  These prior convictions and the bond violation demonstrate that Defendant cannot be trusted to obey firearm regulations and restrictions; they also show that Defendant's possession of firearms creates a danger and risk of harm to the community.[1]

Defendant's firearm convictions, combined with his prior drug trafficking conviction, sufficiently demonstrate a finding of dangerousness. *See United States v. Palm*, No. 24-1524, 2025 LX 293683, at *3 (6th Cir. July 14, 2025) ("Courts have long recognized that 'drugs and guns are

---

[1] With respect to the bond violations based on the May 17, 2024 arrest, the Court notes that: (i) Defendant was arrested and charged with three counts of improperly handling firearms in a motor vehicle and two counts of driving while under the influence of alcohol or drugs; (ii) those charges are still pending before the state court; and (iii) a warrant was issued for Defendant's failure to appear for a pretrial conference.  (ECF No. 5, PageID #14); *see generally* Dkt., *Ohio v. Baker*, No. CR-24-692146-A (Cuyahoga Ct. Comm. Pleas).

11

a dangerous combination.'" (quoting *Smith v. United States*, 508 U.S. 223, 240, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993))); *United States v. Jordan*, 680 F. Supp. 3d 850, 853 (N.D. Ohio 2023) ("Guns and drugs 'are a dangerous combination'—as courts across the country have consistently found. (collecting cases)); *United States v. MacKey*, No. 2:23-cr-67, 2023 U.S. Dist. LEXIS 208459, at *10 (S.D. Ohio Nov. 21, 2023) ("Defendant's prior offenses for trafficking in cocaine, having weapons under disability, and improper handling of a firearm, demonstrate dangerousness.").

Because of his prior conviction for drug trafficking, which constitutes an inherently dangerous offense, as well as his various convictions for and conduct related to illegal possession and handling of firearms, the Court finds that Defendant is a danger to others, and he has not met his burden of demonstrating otherwise. Accordingly, Defendant's as-applied challenge fails and the instant prosecution against Defendant pursuant to § 922(g)(1) does not violate his rights under the Second Amendment.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Superseding Indictment (ECF No. 17) is hereby **DENIED.** The Court will reset the trial schedule in this matter in a separate Order.

**IT IS SO ORDERED.**

Date: April 16, 2026

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**